UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| TRACIE ANN WALP,<br>Social Security No. XXX-XX-1356,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 4:14-cv-93-SEB-WGH |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This action is before me, William G. Hussmann, Jr., United States Magistrate Judge, pursuant to Judge Barker's order. (Filing No. 12.)  Plaintiff Tracie Ann Walp seeks judicial review of the Social Security Administration's final decision deeming her ineligible for Disability Insurance Benefits and Supplemental Security Income.  The matter is fully briefed. (Filing No. 17; Filing No. 24.)  Being duly advised, I recommend that the Court **AFFIRM** the decision.

**I.      Background**

Walp is 43 years old and holds a high school education. (Filing No. 9-2 at ECF p. 50.)  Between August of 2001 and November of 2006, Walp worked in five different jobs—cashier, tow truck driver, school bus driver, apartment

manager, and office manager—each for between 6 and 13 months. (Filing No. 9-6 at ECF p. 18.) She has not worked since.

Walp applied for both Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) in April of 2008 but was not successful. (*See* Filing No. 9-3 at ECF pp. 11-19.) In January of 2011, Walp reapplied, alleging that she became disabled in July of 2010 by a combination of 11 physical and mental impairments. (Filing No. 9-5 at ECF pp. 4-12; Filing No. 9-6 at ECF p. 17.) This second round of applications is now before the Court.

The Social Security Administration denied Walp's applications initially and upon review. (Filing No. 9-3 at ECF pp. 2-7.) An administrative law judge (ALJ) heard Walp's case in December of 2012[1] and issued an opinion denying her claims the following month. (*See* Filing No. 9-2 at ECF pp. 26-37.) In June of 2014, the Appeals Council denied Walp's request to review the ALJ's decision. (*See id.* at ECF pp. 2–7.)

Walp now challenges several of the ALJ's findings, which represent the Social Security Administration's "final decision" under 42 U.S.C. § 405(g). *E.g.*, *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014).

---

[1] A transcript of this hearing does not appear in the Record; in its place stands a transcript from Walp's hearing on her initial application. (*See* Filing No. 9-2 at ECF pp. 45-94.)

**A. Walp's Burden of Proof and the ALJ's Five-Step Inquiry**

In order to qualify for benefits, Walp must establish that she suffered from a disability as defined by the Social Security regulations. A disability is an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To establish a disability, a claimant must present medical evidence of an impairment resulting from:

> anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms.

20 C.F.R. §§ 404.1508, 416.908.

An ALJ must perform a sequential, five-step inquiry to determine whether a claimant is disabled:

(1) Was the claimant unemployed at the time of the hearing?

(2) Does the claimant suffer from a severe impairment or a severe combination of impairments?

(3) Are any of the claimant's impairments—individually or combined—so severe that the Social Security regulations have listed them as necessarily precluding the claimant from engaging in substantial gainful activity?

(4) Does the claimant lack residual functional capacity (RFC) to perform her past relevant work?

(5) Does the claimant lack RFC to perform any other work existing in significant numbers in the national economy?

See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant is disabled only if the ALJ answers "yes" to all five questions.  See *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).  An answer of "no" to any question ends the inquiry immediately and precludes the claimant from eligibility for benefits.  *Id.*  The claimant bears the burden of proof at Steps One through Four.  *Id.*  If the claimant succeeds, the Commissioner bears the burden at Step Five of proving that the claimant is not disabled.  *Id.*

**B. The ALJ's Findings**

At Step One, the ALJ found that Walp had not engaged in substantial gainful activity since her alleged onset date.  (Filing No. 9-2 at ECF p. 28.)

At Step Two, the ALJ found Walp severely impaired by a Chiari I malformation, degenerative disc disease of the cervical and lumbar spines, bursitis of the hips, carpal tunnel syndrome, interstitial cystitis, obesity, and depression.  (*Id.*)  The ALJ also noted that Walp reported a diagnosis of fibromatosis in her feet, but he found that this condition did not constitute a medically determinable impairment.  (*Id.* at ECF p. 29.)

At Step Three, the ALJ found that none of Walp's impairments— individually or combined—met or medically equaled the severity of a listed impairment.  (*Id.* at ECF p. 23.)  The ALJ gave specific attention to Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), and 12.04

4

(affective disorders) but found that Walp's limitations fell short of the listed criteria. (*See id.* at ECF pp. 29–31.)

Before proceeding to Step Four, the ALJ found that Walp's RFC allowed her to perform sedentary work with several limitations. (*See id.* at ECF p. 31.)

At Step Four, the ALJ found Walp unable to perform any of her past relevant work. (*Id.* at ECF pp. 35–36.) At Step Five, however, the ALJ found Walp capable of performing such sedentary work as "clerical support worker," "quality control worker," and "hand packager." (*See id.* at ECF pp. 36–37.)

## II. Standard of Review

The Court must affirm the ALJ's decision unless it lacks the support of substantial evidence or rests upon a legal error. *E.g., Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009); 42 U.S.C. § 405(g). The ALJ—not the Court— holds discretion to weigh evidence, resolve material conflicts, make independent factual findings, and decide questions of credibility. *Richardson v. Perales,* 402 U.S. 389, 399–400 (1971). Accordingly, the Court may not re-evaluate facts, reweigh evidence, or substitute its judgment for the ALJ's. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999).

Even where the ALJ has based his decision on a legal error, the Court may not remand the action if the error was harmless. *McKinzey v. Astrue,* 641 F.3d 884, 892 (7th Cir. 2011). The harmless error standard does not allow the ALJ's decision to stand simply because it is otherwise supported by substantial evidence. *E.g., Spiva v. Astrue,* 628 F.3d 346, 353 (7th Cir. 2010). Substantial-evidence review ensures that the Administration has fulfilled its

statutory duty to "articulate reasoned grounds of decision." *Id.* In contrast, review for legal errors "ensure[s] that the first-line tribunal is not making serious mistakes or omissions." *Walters v. Astrue,* 444 F. App'x 913, 919 (7th Cir. 2011) (non-precedential order) (citing *Spiva,* 628 F.3d at 353). Therefore, an error is harmless only if the Court determines "with great confidence" that remand would be pointless because no reasonable trier of fact could reach a conclusion different from the ALJ's. *McKinzey,* 641 F.3d at 892; *Sarchet v. Chater,* 78 F.3d 305, 309 (7th Cir. 1996).

### III. Analysis

Walp presents two grounds for remand: The ALJ erred in weighing several medical opinions, and he further erred in finding Walp's allegations less than fully credible. I address each issue in turn.

**A. The ALJ did not err in weighing the several medical opinions.**

Plaintiff argues the ALJ erred in weighing the medical opinions of several doctors and the opinion of a nurse practitioner. (Filing No. 17 at ECF pp. 17-31.)

An ALJ must evaluate every medical opinion he receives. 20 C.F.R. § 416.927(c). "Medical opinions are statements . . . that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

6

When weighing medical opinions, an ALJ should ordinarily assign greater weight to an examining source's opinion than he assigns to a non-examining source's opinion.  20 C.F.R. § 416.927(c)(1).  Additionally, an ALJ must ordinarily grant a treating source's opinion "controlling weight."  20 C.F.R. § 416.927(c)(2).  If an ALJ differs from either of these defaults, he is required to explain why an opinion deserves less weight after considering the following:

- the length, nature, and extent of the treatment relationship;
- the extent to which the source supports her opinion with explanations;
- the opinion's consistency with the record as a whole;
- whether the source has rendered an opinion in her area of specialty; and
- other factors, such as the source's familiarity with disability proceedings and the other evidence in the record.

20 C.F.R. § 416.927(c)(2)–(6).  While each factor must be considered, the ALJ does not have to address each one in his written option.  An ALJ is required, however, to articulate at least "good reasons" for his decision.  20 C.F.R. § 416.927(c)(2).

In addition to medical opinions, an ALJ should consider other medial sources.  SSR 96-7p.  This requirement is relevant here to the opinions of treating nurse practitioner Melanie McGlothlin, which fall within that category.  As an "other medical source," nurse practitioner McGlothlin's opinion must also be considered and weighed according to the factors in 20 C.F.R. § 416.927(c)(2)–(6).

7

In total, I cannot find that the ALJ failed to follow the statutorily mandated procedure in weighing the opinions. Rather, I find that he adequately evaluated the opinions and appropriately credited them by incorporating them into his RFC determination. Especially because I cannot reweigh the evidence, see Butera v. Apfel, 173 F.3d 1049, 1055 (7th Cir. 1999), I find no error in the ALJ's opinion in this regard.

### 1. The ALJ did not err by giving Dr. Ross's opinion "little weight."

The ALJ gave "little weight" to the opinion of Dr. Phillip Ross, Walp's treating physician. (Filing No. 9-2 at EFC p. 34.) As a treating physician, Dr. Ross' opinions might presumptively be entitled to controlling weight, but several facts make the ALJ's finding appropriate in this case.

First, Dr. Ross does not link the standing and sitting limitations he recommends to any of Walp's specific symptoms or conditions. The limitations are not explained or supported by the evidence in the record, by his treatment notes, or explained in his letter. (Filing No. 9-7 at EFC pp. 4-6, 14.)

Second, Dr. Ross' opinions were rightfully given less weight because he himself says he is "no expert . . . by any means" on the Chiari I malformation, a neurological disorder that afflicts Walp. (Filing No. 9-7 at EFC p. 14.) Dr. Ross is a general practitioner. While he may have seen Walp for the longest time, his lack of expertise on the matters at hand do not suggest that his recommendations should be given controlling weight in his case.

8

Third, the ALJ's RFC does reflect Dr. Ross' opinion from his report at Filing No. 9-9 at EFC p. 100. This report says that Walp should be able to sit for four hours and stand or walk for two hours in an eight-hour workday. (*Id.*) Dr. Ross' report at Filing No. 9-7 at EFC p. 14 also only says that Walp should have the option to change body positions every 20 minutes while sitting or standing; the report does not say that she can only sit for 20 minutes at a time. Neither opinion explains the basis for these time limitations.

The ALJ was entitled to give Dr. Ross' opinions little weight. He is supposed to assess the opinions based on the 20 C.F.R. § 416.927 factors. The ALJ did this, and provided good reasons for his deciding to weigh the opinion as he did.

### 2. The ALJ did not err by assigning "little weight" to N.P. McGlothlin's opinion.

Nurse McGlothlin opined that Walp can sit for no more than two hours at one time and for fewer than five hours in one day. The ALJ afforded her opinion "little weight" because "there is no evidence to support that the claimant would be limited to sitting just five hours per day." (Filing No. 9-2 at ECF p. 34.) Walp asserts error on grounds that there is evidence to support the opinion and that the ALJ failed to go through the statutory factors in making his determination.

While the ALJ does not elaborate on his justifications, the information from Nurse McGlothlin truly does not provide much in the way of support for her opinions. (Filing No. 9-8 at EFC pp. 87-89.) The Nurse's letter gives a

summary of Chiari I generally, but does not discuss any symptoms that Walp exhibits or the resulting limitations that these place on her.  (*Id.*)  She further gives "common side effects" of the medication Walp takes without any description of the side effects that Walp herself has actually dealt with.  (*Id.*)  In fact, all that McGlothlin says with regards to Walp specifically is that she has responded well to treatment and medical management.  (*Id.*)

The ALJ did not err in his conclusion here and gives a valid reason for finding Nurse McGlothlin's opinion was entitled to little weight.

### 3. The ALJ did not err in his assessment of Dr. Wang's opinion.

Walp takes issue with the ALJ affording greater weight to Dr. Shuyan Wang's objective findings and less weight to her assessment and suggested restrictions on sitting.  (Filing No. 17 at ECF pp. 24-25; Filing No. 9-2 at ECF p. 34.)  But the ALJ decision was supported by substantial evidence.  The ALJ considered and summarized Dr. Wang's findings, and he explains how and why Dr. Wang's opinion was weighed.  (Filing No. 9-2 at ECF p. 29-30, 32).  The ALJ's statements accurately reflect and draw upon the record.  Any further evaluation of this decision would require that I reweigh evidence, which is impermissible at this stage.  *Butera,* 173 F.3d at 1055.

While another might have evaluated this evidence differently, the ALJ did not cherry pick evidence from Dr. Wang's testimony, nor is there other reversible error in his analysis here.

### 4. The ALJ did not err in giving little weight to Dr. Smith's opinion of Walp's mental RFC.

10

Dr. Brenda Smith issued an RFC assessment and a subsequent letter opining that Walp satisfied Listing 12.04.  Dr. Smith was Walp's treating psychiatrist, but—as the ALJ stated—the treatment records he provided do not support the limitations that Dr. Smith suggested.  (Filing No. 9-8 at EFC pp. 26-28, 41-43, 49-50, 90-92, 112-113.)  The ALJ was justified in finding that Dr. Smith's assessment "does not include any objective findings to support it." (Filing No. 9-2 at EFC p. 35.)

The ALJ does not have to accept Dr. Smith's opinions.  In giving Dr. Smith's opinion little weight, the ALJ sufficiently provided good reasons for his decision.

### 5. The ALJ did not err in rejecting Dr. Lynch's opinion that Walp's ability to tolerate stress was markedly limited.

The ALJ considered two opinions from reviewing consultant Dr. Lynch, giving great weight to the first (from April 2011), which opined only a moderately limited tolerance for stress, but giving less weight to the second opinion (from August 2011), which found a markedly limited tolerance for stress.  (Filing No. 9-2 at EFC p. 35.)  In making these assessments of Dr. Lynch's opinions, the ALJ reviews both the doctor's detailed subjective evaluation and the GAF score that Dr. Lynch reported on both occasions.  (*Id.*)  The ALJ gives weight to both assessments, but more to the first.

The ALJ explains how roughly the same GAF score was estimated to apply to Walp on both occasions; a 51-53 on the first visit and a 53 on the second.  But the doctor's evaluation of Walp's stress tolerance jumped from

11

"moderate" on the first visit to "marked" on the second. (*Id.*) Because the GAF score reported by Dr. Lynch at both evaluations was in the moderate-severity range, the ALJ explained, he decided to give more weight to the evaluation with a stress-tolerance assessment that paralleled the consistently assessed GAF score. (*Id.*)

The ALJ clearly provided substantial evidence drawn from the record to support his decision. He did not cherry pick one assessment over the other, but acknowledged and weighed both, giving reasons for preferring one to the other. Any review of his decision to weigh the first visit more heavily than the second would require me to impermissibly reweigh the evidence. *Butera,* 173 F.3d at 1055. As such, this portion of the ALJ's decision should be held valid.

### B. The ALJ's credibility determination was not perfect, but it also was not patently wrong.

Walp also alleges that the ALJ committed a series of errors in assessing her credibility. While some of the errors that Walp alleges may be well founded, none rise to the level required for reversal or remand. They do not render the credibility determination patently wrong, and so these decisions should be affirmed.

The Social Security Administration's policies call for ALJs to "make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p. This credibility assessment is part of the ALJ's RFC determination. *See id.* (citing 20 C.F.R. 404.1529(c)(4)).

12

"So long as an ALJ gives specific reasons supported by the record," a reviewing court must defer to her "credibility determination unless it is patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). A credibility determination is patently wrong only if it "lacks any explanation or support." *Murphy*, 759 F.3d at 816. This is an "extremely deferential" standard. *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013). "But when a credibility finding rests on 'objective factors or fundamental implausibilities,' rather than on a claimant's demeanor or other subjective factors," a reviewing court enjoys "greater leeway to evaluate the ALJ's determination." *Id.* (quoting *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013)).

### 1. The ALJ erred (albeit harmlessly) by failing to inquire into Walp's lack of treatment.

The ALJ criticized Walp's credibility in part because he found "very little in the way of current physical treatment records from 2012 and very little evidence in the record as to the claimant's current physical abilities and limitations." (Filing No. 9-2 at EFC p. 32.) Walp argues that this statement constitutes error because the ALJ did not question Walp about any reasons for her limited course of treatment. (Filing No. 17 at EFC p. 28.) The Commissioner argues only that any error is harmless because this statement makes up only a small fraction of the credibility determination. (Filing No. 24 at EFC p. 10.)

Indeed, an ALJ may not base an adverse credibility determination on a conservative course of treatment without inquiring into why the claimant took

13

such a conservative course of treatment.  SSR 96-7p.  And the hearing transcript reveals that the ALJ did not raise this subject with Walp.  (Filing No. 9-2 at EFC pp. 47-93.)  So the ALJ erred in this respect.

But this error does not independently create a reason to remand the action.  The ALJ gave a thorough explanation for his credibility determination, and this error was but a small part.  For instance, the ALJ noted several inconsistencies in Walp's testimony and the evidence.  (Filing No. 9-2 at EFC pp. 33-34.)  Walp's subjective complaints that she was too physically impaired to even perform sedentary work did not align with doctors' reports of "excellent strength," "no evidence of any atrophy, and the ability to use her upper and lower extremities," "doing very well with self-care . . . tend[ing] to take on much of the family home care."  (Filing No. 9-2 at EFC pp. 33-34.)  Further, Walp reported having a hard time seeing and hearing, but appeared to have no trouble hearing to answer questions at her hearing before the ALJ.  (Id.)

Therefore, even acknowledging this error, the ALJ still supported his credibility assessment with sufficient evidence that I cannot fairly characterize it as patently wrong.

### 2. The ALJ did not err by overemphasizing the absence of any evidence of neurological deficiencies.

Walp accuses the ALJ of "cherry-picking" by ignoring abundant evidence of Walp's physical abnormalities and instead finding she lacks credibility because the Record contains no evidence of neurological defects.  (Filing No. 17 at EFC p. 28.)

14

Of course, all the evidence must be considered. The "ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010).

But I find no reference to the absence of neurological defects at any point in the ALJ's credibility assessment. (Filing No. 9-2 at ECF pp. 33-35.) The ALJ states the basis for his opinion much more generally: "the claimant's subjective complaints of severe limitations are not supported by the clinical records, consultative assessments, or diagnostic testing." (Filing No. 9-2 at ECF pp. 35.) Accordingly, I find no basis for Walp's argument.

### 3. The ALJ did not err by distorting evidence of Walp's daily activities.

The ALJ's credibility assessment draws heavily on what he characterizes as discrepancies between her daily activities and the limitations she claims. (Filing No. 9-2 at EFC p. 33-35.) Walp argues that the ALJ erred by ignoring evidence of activities demonstrating Walp's limitations and citing only those activities that support his ultimate finding that she is not disabled. (Filing No 17 at EFC p. 29.) As the Commissioner notes, an ALJ must consider a claimant's daily activities when assessing her credibility. (SSR 96-7p.) But the rule against cherry picking (see Part III(B)(2) above) applies to that analysis.

I find no error in the ALJ's assessment of Walp's daily activities. There was no cherry picking evidence; the analysis is not one-sided. Rather, it notes

15

instances in which Walp struggles to complete activities without assistance—including many Walp cites as ignored.  (Filing No. 9-2 at EFC p. 32-35.)  Further, the ALJ did not use Walp's reported daily activities as evidence that she could work, but used them in conjunction with the rest of the record to assess her credibility.  I cannot find that the ALJ ignored an entire line of evidence favoring Walp.

### 4. The ALJ did not commit harmful error by describing Walp's interstitial cystitis as "under better control."

In the course of the credibility assessment, the ALJ cited a treatment note as reporting that her interstitial cystitis was "under better control."  (Filing No. 9-2 at EFC p. 34.)  Walp asserts error, citing case law for the proposition that a claimant whose impairments are "under control" may well be unable to work full-time.

Walp's point is well-taken but fails to demonstrate reversible error.  This observation would call for remand if it was the sole reason the ALJ found Walp able to work.  But it was not.  Instead, it was one of many reasons the ALJ found Walp less than fully credible.  (*Id.*)  Because the ALJ supported his credibility determination with other substantial evidence, I cannot deem it patently wrong.

### 5. The ALJ's credibility determination does not require remand.

In sum, I cannot find the ALJ's credibility assessment patently wrong.  The errors that Walp cites are either absent or harmless.  Remand would be inappropriate.

**IV.   Conclusion**

For the foregoing reasons, I recommend that the Court **AFFIRM** the ALJ's opinion.  Any objections to this Report and Recommendation must be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1).  Failure to file

timely objections within 14 days after service will constitute waiver of subsequent review absent a showing of good cause for such failure.

 **SO RECOMMENDED** the 28th day of August, 2015.

            */s/ Wm. G. Hussmann, Jr.*
            WILLIAM G. HUSSMANN, JR.
              Magistrate Judge

**Served electronically on all ECF-registered counsel of record.**